## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

VERONICA GARDNER, on behalf of herself
and all others similarly situated,

                Plaintiff,

      v.

FLAGSTAR BANK, FSB

                Defendant.

CASE NO.

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff Veronica Gardner, by counsel, for her Class Action Complaint against the Defendant, alleges as follows:

### I.  INTRODUCTION

1. Plaintiff brings this action on behalf of themselves and classes of all similarly situated consumers against Defendant, Flagstar Bank, FSB ("Defendant" or "Flagstar Bank"), arising from (a) its practice of assessing and collecting Overdraft Fees ("OD Fees") on items that did not actually overdraw the account; and (b) its practice of assessing more than one insufficient funds fee ("NSF Fee") on the same item. These practices are barred by Flagstar's Bank's contract.

2. The plain language of Flagstar Bank's adhesion contracts specifically promises that Flagstar Bank will only charge OD Fees on items when such items cause the account to have a negative balance.

3. The Fee Schedule issued by Flagstar Bank makes a promise that Flagstar Bank will not charge OD Fees for an item when there is sufficient money in the account to pay for the item.

4.      The Fee Schedule states that Flagstar Bank will only assess OD Fees "when your Available Balance is less than zero."

5.      But according to the monthly account statements prepared by Flagstar Bank, Plaintiff's account balance was not negative when she was charged OD Fees on several items. Thus, the items did not actually overdraw Plaintiff's account and Flagstar Bank charged hefty OD Fees anyway.

6.      Further, the Fee Schedule promises that Flagstar Bank will only charge one NSF Fee per item.

7.      In breach of this promise, Flagstar Bank charged Plaintiff multiple NSF Fees on the very same item when it was re-processed.

8.      These practices work to catch accountholders in an increasingly devastating cycle of bank fees.

9.      Plaintiff and other Flagstar Bank customers have been injured by Flagstar Bank's practices. On behalf of themselves and the putative Classes, Plaintiff seek damages, restitution and injunctive relief for Flagstar Bank's breach of contract.

**PARTIES**

10.      Plaintiff Veronica Gardner is a citizen and resident of St. Claire Shores, Michigan.

11.      Defendant Flagstar Bank headquartered in Troy, Michigan. It has over $30 billion and maintains numerous branches across Michigan.

**JURISDICTION**

12.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million,

2

exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant.

13.    Venue and jurisdiction are proper in this district because Flagstar is headquartered in a county encompassed by this District.

## II.  FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.    Flagstar Bank's Fee Schedule Promises That It Will Only Charge OD Fees on Transactions That Actually Overdraw an Account**

14.    Plaintiff's checking account with Flagstar Bank was, at all relevant times, governed by Flagstar Bank's standardized Fee Schedule, the material terms of which are drafted by Flagstar Bank, amended by Flagstar Bank from time to time at its convenience and complete discretion, and imposed by Flagstar Bank on all of its customers.

15.    In plain, clear, and simple language, the contract documents discussing OD Fees promise that Flagstar Bank will only charge OD Fees on items which would place the account in the negative.

16.    Specifically, the Fee Schedule states:

Bounce Protection is a service for our customers under which we may, in our discretion, pay an Item exceeding your Available Balance presented against your account and charge you an Overdraft Charge, instead of returning the Item unpaid and charging you a Non-Sufficient Funds Charge. Bounce Protection is not limited to payment of paper checks. Other transactions made using your account number (such as teller withdrawals, automatic ACH bill payments, and recurring debit card payments) may also be paid. Also, if you give us your specific consent, we may authorize and pay ATM transfers or withdrawals and everyday (non-recurring) debit card purchases that overdraw your account using Bounce Protection and charge you an Overdraft Charge.

Overdrafts and Non-Sufficient Funds <u>Your account is overdrawn when your Available Balance is less than zero. If we pay an Item which exceeds your Available Balance, the transaction will be considered an overdraft transaction and your account will be considered overdrawn.</u> Unless you have asked us not to

pay Items that would cause your account to become overdrawn (and except as otherwise noted in this section and the Fee Schedule), we may assess an Overdraft Charge against your account if we pay an Item exceeding your Available Balance. Or, at our discretion, to avoid overdrawing or causing your account to become further overdrawn, we may return (i.e., not honor or reject) any Item that would cause your account to become overdrawn, or further overdraw your account. If we do not honor such an Item, the transaction will be considered a non-sufficient funds transaction and we may assess a Non-Sufficient Funds Charge against your account.

(emphasis added).

17.    As Flagstar's website also describes:

**What is the difference between my Balance and my Available Balance?**
Your Available Balance is your Balance minus any pending debit card transactions and/or any outstanding holds (for example, holds on deposited checks, fraud/legal holds, or temporary debit authorization holds). Any checks you may have written or ACH transactions that have not posted to your account, Bounce Protection funds, or any funds from accounts(s) you have linked for overdraft (for example, deposit overdraft protection and/or overdraft line of credit) are not reflected in your Balance or Available Balance.

18.    Contrary to these promises, Flagstar Bank's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees.

19.    Without informing its accountholders, Flagstar Bank determines whether an account balance is negative by using a different calculation that it does not disclose.

20.    By using this calculation—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee, Flagstar Bank increases the number of OD Fees it assesses on its accountholders.

21.    This manufactured balance is not the official balance of the account and it is not the balance provided to accountholders in their monthly statements from Flagstar Bank.

Gardner and Class members could not reasonably have expected that Flagstar Bank would assess OD Fees in this manner.

**B.      Examples of Flagstar Bank's Imposition of OD Fees on Plaintiff Gardner**

22.     Flagstar Bank charged Plaintiff Gardner OD Fees on items that did not overdraw her account.

23.     For example, on November 21, 2019, Plaintiff Gardner was assessed a $36 OD Fee for an $8.90 debit card purchase. This is despite the fact that, according to the bank statement issued by Flagstar Bank, her account always had sufficient funds to cover the transaction.

**C.      Flagstar Bank Charges Two or More Fees on the Same Item**

24.     As alleged more fully herein, Flagstar Bank's Fee Schedule allows it to charge a single NSF Fee when an item, including an electronic payment item, is returned for insufficient funds.

25.     In contrast to its Account Agreements, however, Flagstar Bank regularly assesses two or more NSF Fees on the *same* item.

26.     This abusive practice is not universal in the financial services industry.  Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed.  Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

27.     Flagstar Bank's Fee Schedule never discloses this practice. To the contrary, the Bank's Fee Schedule indicate it will only charge a single NSF Fee on an item or per transaction.

**D.      Plaintiff Gardner's Experience**

28.     In support of her claims, Plaintiff Gardner offers an example of an NSF Fee that should not have been assessed against her checking account.

29.     On December 13, 2019, Plaintiff attempted payment via ACH from her account.

30.     Flagstar Bank rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $36 NSF Fee for doing so.  Plaintiff does not dispute the initial fee, as it is allowed by Flagstar Bank's Fee Schedule.

31.     Unbeknownst to Plaintiff and without her request to Flagstar Bank to retry the item, however, seven days later, on December 20, 2019, Flagstar Bank processed the same item yet again. Again, Flagstar Bank rejected the item due to insufficient funds and charged Plaintiff *another* $36 NSF Fee.

32.     *In sum, Flagstar Bank charged Plaintiff $72 in fees to attempt to process a single payment.*

33.     Plaintiff understood her payment to be a single item as is laid out in Flagstar Bank's contract, capable at most of receiving a single NSF Fee (if Flagstar Bank returned it) or a single OD Fee (if Flagstar Bank paid it).

**E.     The Imposition of Multiple Fees on a Single Transaction Violates Flagstar Bank's Express Promises and Representations**

34.     Flagstar Bank's Fee Schedule expressly states that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

35.     Flagstar Bank's Fee Schedule states that it will charge one insufficient funds fee for an "item" that is returned due to insufficient funds.

36.     According to the Fee Schedule:

Non-Sufficient Funds (NSF) Charge (each) $36.00

Overdraft Charge (each) $36

[…]

Bounce Protection is a service for our customers under which we may, in our discretion, pay an Item exceeding your Available Balance presented against your account and charge you an Overdraft Charge, **instead of returning the Item unpaid and charging you a Non-Sufficient Funds Charge.** Bounce Protection is not limited to payment of paper checks. Other transactions made using your account number (such as teller withdrawals, automatic ACH bill payments, and recurring debit card payments) may also be paid. Also, if you give us your specific consent, we may authorize and pay ATM transfers or withdrawals and everyday (non-recurring) debit card purchases that overdraw your account using Bounce Protection and charge you an Overdraft Charge.

Overdrafts and Non-Sufficient Funds Your account is overdrawn when your Available Balance is less than zero. If we pay an Item which exceeds your Available Balance, the transaction will be considered an overdraft transaction and your account will be considered overdrawn. Unless you have asked us not to pay Items that would cause your account to become overdrawn (and except as otherwise noted in this section and the Fee Schedule), we may assess an Overdraft Charge against your account if we pay an Item exceeding your Available Balance. Or, at our discretion, to avoid overdrawing or causing your account to become further overdrawn, we may return (i.e., not honor or reject) any Item that would cause your account to become overdrawn, or further overdraw your account. **If we do not honor such an Item, the transaction will be considered a non-sufficient funds transaction and we may assess a Non-Sufficient Funds Charge against your account.**

37.     The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff Gardner took no action to resubmit them.

38.     There is zero indication anywhere in the Fee Schedule that the same "item" is eligible to incur multiple fees.

39.     Even if Flagstar Bank reprocesses an instruction for payment, it is still the same "item."  The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

40.     The disclosures described above never discuss a circumstance where Flagstar Bank may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

41.     In sum, Flagstar Bank promises that one NSF Fee will be assessed per ACH debit or check, and these terms must mean all iterations of the same instruction for payment. As such, Flagstar Bank breached the contract when it charged more than one fee per item.

42.     Reasonable consumers understand any given authorization for payment to be one, singular  "item," as those terms are used in Flagstar Bank's Fee Schedule.

43.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere does the Bank disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Flagstar Bank customers ever agree to such fees.

44.     Customers reasonably understand, based on the language of the Fee Schedule, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

45.     Instead—and unlike Flagstar's major competitors such as JP Morgan Chase, which does not charge multiple NSF or OD Fees on the same item—Flagstar charges more than one NSF Fee on the same item.

46.     Banks and credit unions like Flagstar that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Flagstar never did here.

47.     For example, Air Academy Federal Credit Union contracts for its NSF fee as follows:

"$32.00 **per presentment**."

*See,* https://www.aafcu.com/fees.html (emphasis added) [last visited on or about March 17, 2020].

48.     Central Pacific Bank contracts unambiguously:

Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**.

*See,* https://www.cpb.bank/media/1618/fee-001-rev-10-24-2019-misc-fee-schedule.pdf (emphasis added) [last visited on or about March 17, 2020].

49.     Community Bank, N.A. unambiguously contracts:

**You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned**.

*See,* https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-FINAL-1.14.2020.pdf (emphasis added) [last visited on or about March 17, 2020].

50.     Delta Community Credit Union contracts unambiguously as follows:

"$30 **per presentment**."

*See,* https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) [last visited on or about March 17, 2020].  Further, in its Account Contract, Delta unambiguously states as follows:

The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee**

**each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See,* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx (emphasis added) [last visited on or about March 17, 2020].

51.     First Financial Bank contracts unambiguously:

Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

*See,* https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (emphasis added) [last visited on or about March 17, 2020].

52.     First Hawaiian Bank unambiguously contracts:

You agree that multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission.

*See,* https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (emphasis added) [last visited on or about March 17, 2020].

53.     First Northern Credit Union unambiguously contracts its NSF fee as,

"$22.00 **per each presentment and any subsequent representment(s)**."

*See*, https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count (emphasis added) [last visited on or about March 17, 2020.

Further, in its Account Contract, First Northern unambiguously contracts as follows:

You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for**

**payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees.**

*See,* (https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_2019.pdf (emphasis added) [last visited on or about March 17, 2020].

## CLASS ACTION ALLEGATIONS

54.    Description of the Classes: Plaintiff brings this class action on behalf of himself and two classes of persons ("the Classes") pursuant to FRCP 23. The Classes are defined as follows:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw a Flagstar checking account (the "OD Fee Class")

> All accountholders who, during the applicable statute of limitations, were charged more than one NSF on the same item on a Flagstar checking account (the "NSF Fee Class")

55.    Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

56.    Excluded from the Classes are Flagstar, its parents, subsidiaries, affiliates, officers and directors, any entity in which Flagstar has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

57.    This action is properly maintainable as a class action.

58.     The class consists of thousands of members, such that joinder of all Class members is impracticable.

59.     There are questions of law and fact that are common to the Class members that relate to Defendant's practice of charging: OD Fees on transactions that did not overdraw accounts, multiple NSF fees for one item or transaction, and Defendant's liability for conversion.

58.     The claims of the Plaintiff are typical of the claims of the proposed Class because they are based on the same contract documents and legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

59.     The Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

60.     The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on Flagstar's conduct and its improper fees. The predominant questions of law and fact in this litigation include, but are not limited to, whether Defendant wrongfully:

- Imposed OD Fees on transactions when those transactions did not overdraw accounts, and/or imposed more than one NSF Fee on the same item.

- Breached its contract with Plaintiff and Class members.

- Breached the covenant of good faith and fair dealing imposed on it.

61.     Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

62.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be

economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Flagstar's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Flagstar's conduct and the claims they may possess.

63.   It appears that other persons who fall within the Class definitions set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

64.   This proposed class action does not present any unique management difficulties.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD**</u>
<u>**FAITH AND FAIR DEALING**</u>
**(On Behalf of Plaintiff and the Classes)**

65.   Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

66.   Plaintiff and Flagstar have contracted for bank account deposit, checking, ATM, and debit card services.

67.   All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were drafted by Defendant, were contracts of adhesion not open to negotiation and were used uniformly.

68.     Flagstar breached promises included in the account documents as described herein.

69.     Michigan imposes a duty of good faith and fair dealing on contracts between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

70.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

71.     Flagstar has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein. Specifically, Flagstar exercised its discretion in bad faith by charging OD Fees on transactions that did not overdraw accounts and by charging multiple NSF Fees on the same item.

72.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

73.     Plaintiff and members of the Class have sustained damages as a result of Flagstar's breach of the contract.

74.     Plaintiff and members of the Class have sustained damages as a result of Flagstar's breach of the covenant of good faith and fair dealing.

## COUNT II
## Conversion under MCL 600.2919a
### (On Behalf of Plaintiff and the Classes)

75.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

76.     Plaintiff and members of the class entrusted money to be held by Defendant.

77.     The money Defendant held for Plaintiff and class members were held in identifiable accounts and was still the property of Plaintiff and class members.

78.     These deposits were bailments and the Defendant was a bailee.

79.     Defendant stole, embezzled and/or converted funds belonging to Plaintiff and members of the class and converted Plaintiff's funds to its own use.

80.     Money taken out of the accounts of Plaintiff and members of the class for OD and NSF fees were converted to Defendant's ledgers.

81.     Plaintiff and members of the class no longer had use of the funds taken as OD and NSF fees.

82.     Defendant did have use of funds taken from the account of Plaintiff and from the accounts of members of the class as OD and/or NSF fees.

83.     Defendant had dominion and control of all funds taken from accounts as OD and NSF fees.

84.     Defendant wrongfully took OD and NSF fees from the accounts of Plaintiff and members of the class.

85.     Plaintiff and members of the class were harmed and are entitled to all of the remedies described in MCL 600.2919a.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

A.     Certification for this matter to proceed as a class action;

B.     Restitution of all improperly assessed OD and NSF Fees paid to Flagstar by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

C.     Actual damages in an amount according to proof;

D.     Three times the actual damages sustained, plus costs and reasonable attorneys fees;

E.     Pre-judgment interest at the maximum rate permitted by applicable law;

F.     Costs and disbursements assessed by Plaintiff in connection with this action;

G.     Reasonable attorneys' fees pursuant to applicable law; and

H.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: July 31, 2020                     Respectfully submitted,

/s/ Steven E. Goren
32677 Redfern Street
Franklin, MI 48025
(248)408-0051
sgoren@gorenlaw.com
P36581

and:

Jeffrey Kaliel*
Sophia Gold*
KALIEL PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
(202) 320-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Taras Kick*
The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, CA 90049
Phone: (310)395-2988
Fax: (310)395-2088

*to seek admission

*Counsel for Plaintiff and the Proposed
Plaintiff Class*