UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERONICA GARDNER,

Plaintiff,

v.

FLAGSTAR BANK, FSB,

Defendant.

_____/

Case No. 20-cv-12061

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS [#18]**

**I. INTRODUCTION**

On July 31, 2020, Plaintiff Veronica Gardner brought the instant action on

behalf of herself and all others similarly situated against Defendant Flagstar Bank,

FSB ("Flagstar" or "Bank").  ECF No. 1.  Plaintiff filed her First Amended

Complaint on October 6, 2020 and alleges that Defendant unlawfully assesses and

collects overdraft fees on transactions, sometimes multiple times, in violation of the

contract between the parties.  *Id.*  Plaintiff brings two state law claims for breach of

contract and conversion.  *Id.*

Presently before the Court is Defendant's Motion to Dismiss.  ECF No. 18.

This matter is fully briefed.  ECF Nos. 20, 23.  Plaintiff also filed two Notices of

Supplemental Authority.  ECF Nos. 26, 28.  A hearing on this matter was held on

August 11, 2021.  For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss [#18].

## II. FACTUAL BACKGROUND

Plaintiff Veronica Gardner has a checking account with Defendant Flagstar Bank.  ECF No. 14, PageID.75.  This relationship is governed by Account Agreement Documents ("Agreement") that include definitions, policies, and procedures concerning Plaintiff's account.  *Id.*  Specifically, the Agreement contains various provisions regarding the assessment and payment of overdraft fees and insufficient funds fees (referred to by the parties as "OD/NSF Fees").  ECF No. 14, PageID.66; ECF No. 18, PageID.148.

Plaintiff's claims derive from two related but distinct actions by Defendant, which she terms "fee maximization practices."  ECF No. 20, PageID.215.  First, Plaintiff alleges that Defendant unlawfully charges overdraft fees on transactions referred to as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").  ECF No. 14, PageID.69.  This occurs when an individual has made a transaction and a temporary authorization hold is placed on the account for the amount of that transaction.  *Id.*  This hold is in place while the merchant processes, and eventually settles, the transaction with Flagstar.  *Id.*; ECF No. 18, PageID.149.  In these APPSN Transactions, there are always positive funds available in the account balance that cover this transaction, even though subsequent

transactions put the account into a negative balance. Plaintiff emphasizes that "customers' accounts will always have sufficient funds available to cover" the initial transaction made with a positive balance "because Flagstar Bank has already sequestered these funds for payment." ECF No. 14, PageID.69. Notwithstanding the initial positive balance when the funds were temporarily held, Plaintiff states that "Flagstar Bank later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance." *Id.* at PageID.69-70.

This practice, Plaintiff alleges, is barred by the terms of the Agreement with Flagstar regarding overdraft fee assessments. However, Defendant maintains that the Agreement makes clear that this process may occur, and that the customer's balance is not assessed "unless or until the payment is posted, which typically takes up to two days." ECF No. 18, PageID.162. Thus, the parties dispute whether the Agreement indicates that OD/NSF Fees will be assessed either at the point of the transaction's (1) initial authorization or (2) payment when the hold is released and the transaction is settled days later.

Second, Plaintiff alleges that Defendant assesses multiple NSF Fees "on the same (often small dollar) electronic transactions or checks when reprocessed again and again after being returned for insufficient funds." ECF No. 20, PageID.215. This process occurs after the initial authorization when the temporary hold is placed on positive funds. In these cases, the transaction is repeatedly processed by the bank

3

or a merchant, and an OD/NSF Fee is assessed per each processing request. ECF No. 14, PageID.82. This dispute between the parties centers around the definition of the term "item" in the Agreement. Plaintiff alleges that the Agreement "expressly states that [only] a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments," and therefore the "same 'item' on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff Gardner took no action to resubmit them." *Id.* at PageID.82, 84. Defendant maintains, however, that "the Agreement does not state that 'item' means only one presentment of a transaction," so the multiple assessments of NSF Fees in this circumstance are permitted by the Agreement. ECF No. 18, PageID.152.

Plaintiff accordingly filed the instant action against Flagstar Bank on July 31, 2020. ECF No. 1. On October 6, 2020, Plaintiff filed her First Amended Complaint and brings two claims for breach of contract, including breach of the covenant of good faith and fair dealing, and conversion under Michigan state law. ECF No. 14.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a district court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal

Rule of Civil Procedure 8(a)(2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the

pleader is entitled to relief, in order to give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley*

*v. Gibson*, 355 U.S. 41, 47 (1957)).  To meet this standard, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying

the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe

the complaint in a light most favorable to the plaintiff and accept all of his factual

allegations as true.  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  While

courts are required to accept the factual allegations in a complaint as true, *Twombly,*

550 U.S. at 556, the presumption of truth does not apply to a claimant's legal

conclusions.  *See Iqbal,* 556 U.S. at 678.  Therefore, to survive a motion to dismiss,

the plaintiff's pleading for relief must provide "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of*

*Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

## IV. DISCUSSION

In the present Motion, Defendant claims that Plaintiff's First Amended Complaint should be dismissed in its entirety because the Agreement does not contain ambiguous language or permit conduct in violation of Defendant's obligations such that either a breach of contract or conversion claim may stand. Plaintiff maintains that she has pled facts sufficient to survive dismissal on both of her claims at this stage.

### A. Breach of Contract (Count I)

Count I of Plaintiff's First Amended Complaint alleges that Defendant has breached provisions of the Agreement regarding overdraft fee assessment timing and frequency. Specifically, this claim asserts that Defendant is (1) improperly charging OD/NSF Fees on APPSN Transactions in contravention of the Agreement's language regarding overdrafts and available balances, and (2) improperly charging multiple OD/NSF Fees on singular transactions with multiple merchant presentments on overdrawn accounts.

As an initial matter, Defendant claims that "Plaintiff has not identified any contract provision that has been violated by Flagstar," and thus her claim cannot be maintained for breach of contract. ECF No. 18, PageID.158. However, a review of Plaintiff's First Amended Complaint does not support this assertion. While the text of Count I does not list specific contractual language, the First Amended Complaint

6

is replete with references to various provisions of the Agreement that were purportedly breached by Defendant when OD/NSF Fees were assessed against Plaintiff.  *See, e.g.*, ECF No. 14, PageID.75-77, 82-84.  Count I also expressly incorporates the preceding paragraphs of Plaintiff's First Amended Complaint prior to asserting the breach claim.  *Id.* at PageID.91.  The Court thus declines to adopt Defendant's argument that the breach of contract claim is improper for failure to identify which terms of the Agreement were breached.

### 1. APPSN Transactions

In the First Amended Complaint, the Response, and the hearing on the matter, Plaintiff directs the Court to various provisions in the Agreement that are breached each time an APPSN Transaction occurs.  One section broadly defines what balances and available funds include:

> Balance is the total amount of funds in your account from your posted transactions.
>
> **Available Balance is your Balance minus any pending debit card transactions and/or any outstanding holds (for example, holds on deposited checks, fraud/legal holds, or temporary debit authorization holds).**
>
> Any checks you may have written or ACH transactions that have not posted to your account, Bounce Protection funds, or any funds from accounts(s) you have linked for overdraft (for example, deposit overdraft protection and/or overdraft line of credit) are not reflected in your Balance or Available Balance.

ECF No. 14-1, PageID.99 (emphasis added).  In other words, a customer's Available

Balance, from which he or she could make purchases with positive funds, do not

include outstanding holds.   Temporary debit authorization holds are defined and

explained as follows:

> A temporary debit authorization hold affects your Available Balance – On
> debit card purchases, merchants may request a temporary debit authorization
> hold on your account for an amount that may differ from the actual amount of
> your purchase. **This temporary debit authorization hold reduces your**
> **Available Balance** unless and until: (1) we release it after two business days;
> or (2) before we release the temporary debit authorization hold, the merchant
> provides to us the actual amount of the purchase and we are able to adjust your
> account to reflect the actual purchase amount. Please note that adjustment may
> take more than two business days depending on when the merchant provides
> the actual amount of the purchase to us.
>
> If, at any time before the temporary debit authorization hold is released or the
> adjustment is made, a transaction is presented to us for payment in an amount
> greater than your then-existing Available Balance, the transaction presented
> for payment will be: (1) a non-sufficient funds (NSF) transaction if we do not
> pay it; (2) an overdraft transaction if we do pay it; or (3) declined if the
> transaction is a debit/ATM card purchase and you have not authorized us to
> pay overdrafts on your ATM and everyday debit card transactions. For non-
> sufficient funds or overdraft transactions, you will be charged an NSF fee
> according to the Fee Schedule. You will be charged the NSF fee even if you
> would have had sufficient funds in your account had the amount of the hold
> been equal to the actual amount of your transaction.

*Id.* at PageID.101 (emphasis added).  Another provision in the Agreement similarly

discusses these temporary debit authorizations and how the held funds may or may

not be accessed by an account holder:

> Purchases made using your Flagstar debit card or ATM card are subtracted
> from your designated Flagstar account. PIN based transactions generally are
> settled the same day. Signature based transactions, on the other hand, may

take longer to settle**. Therefore, a temporary debit authorization creates a hold on the account that reduces your Available Balance by the amount of the authorization, even if the amount of the transaction is more or less when it is finally posted.** While pending, the temporary debit authorization hold could lead to **other pending or future transactions** (1) being returned for non sufficient funds if we do not pay them, (2) contributing to an overdraft if we do pay them, or (3) being declined if the transaction is a debit/ATM card purchase and you have not authorized us to pay overdrafts for debit/ATM card transactions.

*Id.* at PageID.117 (emphasis added).

Plaintiff points to these provisions within the Agreement to illustrate how the temporary debit authorizations are described, specifically in relation to the hold authorizations with positive funds. Plaintiff explains that "available funds are immediately placed on 'hold' for the transaction they were held for, and those held funds cannot be consumed by *later made* transactions—which is why Flagstar repeatedly warns accountholders that such later made transactions can [incur] OD Fees as a result of the held funds being unavailable." ECF No. 20, PageID.231 (emphasis in original). The dispute in the instant matter, however, does not concern the assessment of OD Fees on subsequent transactions after a temporary debit authorization hold is placed; instead, Plaintiff asserts that nothing in the Agreement language permits Defendant to later charge an OD/NSF Fee on the funds that were sequestered within the temporary debit authorization hold when she makes her initial purchase, and thus the Agreement is ambiguous about overdraft fee assessments.

In response, Defendant avers that Plaintiff is "contorting the Agreement's clear definitions of a customer's Balance and Available Balance[ and] twisting the Agreement's explanation of a 'temporary debit authorization hold' to mean that money is physically set aside and depleted from Plaintiff's Balance."  ECF No. 18, PageID.161.  Defendant disagrees with Plaintiff's characterization of the temporary holds placed upon pending transactions and emphasizes that "[n]owhere does the Agreement say that the hold removes money from the account, set aside money in that account, or posts the transaction to the Balance."  *Id.* at PageID.162.  Instead, Defendant asserts, the temporary hold simply confirms that a customer has sufficient funds at the time of authorization by a merchant, and the balance is settled when the payment is posted up to two days later.  *Id.*

Further, the parties disagree about when the assessment of an OD/NSF Fee is warranted under the Agreement when a temporary hold is deployed by Flagstar. This dispute centers around whether the assessment of fees is permitted at *authorization*—when Plaintiff first makes her transaction and the temporary hold is placed—or whether the assessment occurs at *settlement/payment*—when Flagstar later settles the transaction with the third-party merchant, posts the transaction to the account, and removes the hold.  Plaintiff claims that the Agreement contains a "clear promise to accountholders that authorization is the key moment when overdraft fees on debit card transactions are determined" and cites to a provision in the Agreement

stating that Flagstar may "honor withdrawal requests that overdraw your account."

ECF No. 20, PageID.232; ECF No. 14-1, PageID.101.   However, Defendant

maintains that the Agreement is clear that OD/NSF Fees are determined at the point

of payment, when Flagstar settles the transaction with the merchant and posts it in

Plaintiff's balance.   ECF No. 18, PageID.163.   According to Defendant, this is

expressly provided for in the Agreement:

> Your account is overdrawn when your Available Balance is less than zero.
> One way this can happen is if we **pay** an Item for more money than your
> Available Balance.

ECF No. 14-1, PageID.104 (emphasis added).   Thus, Defendant believes there are

no ambiguities in the Agreement and Plaintiff is contorting clear contractual

language about when OD/NSF Fees are assessed.

Whether contract language is clear or ambiguous is a question of law. *Collins*

*v. National General Ins. Co.*, 834 F.Supp.2d 632 (E.D. Mich. 2011).   A contract is

ambiguous if it is subject to two reasonable interpretations.   *See Citizens Ins. Co. of*

*America v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688 (6th Cir.

2006) (quoting *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1003 (6th

Cir.1993)).   If the Court decides that the contract is ambiguous, then the meaning of

the contract becomes a question of fact and dismissal of the claim is improper.   *See*

*51382 Gratiot Ave. Holdings, LLC v. Chesterfield Development Co., LLC*, 835

F.Supp.2d 384, 391 (E.D. Mich. 2011).

Federal courts across the country have been presented with similar or identical APPSN Transaction claims and have overwhelmingly denied dismissal motions on the grounds brought by Defendant and other financial institutions.  In *Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33 (2nd Cir. 2017), the Second Circuit found that the district court erred in dismissing a breach of contract claim that was predicated on a similar ambiguity about the timing of overdraft fee assessments by a bank.  The *Roberts* court found unpersuasive the argument that the words "pay" or "payment" as used in the contract clearly meant that the overdraft fees would be assessed at payment and settlement, not at authorization.  *Id.* at 36.  Thus, the Second Circuit found that dismissal was improper because the definition of "payment" and when fees were assessed was ambiguous and subject to more than one interpretation.  *Id.* (explaining that "it is equally reasonable to understand the term 'Overdraft' as referring to Capital One's election to make a payment, which would occur at the time of authorization (as asserted by Roberts), or as referring to the payment itself, which would occur at the time of settlement (as asserted by Capital One).").

This Court is persuaded by the reasoning of the Second Circuit and other district courts who have recently considered this issue.  For example, in *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018), the court found that a similar contractual provision regarding debit holds and overdraft fees was ambiguous and thus precluded dismissal of the breach

of contract claim. *Id.* at *7 ("The Account Agreements do not clearly identify how funds sequestered for a transaction authorized with positive funds are to be used when the transaction is paid . . . . [the contract] can thus be fairly read to include either a consumer's transaction with a merchant (*i.e.*, authorization of the transaction) or Navy Federal's transaction with a merchant (*i.e.*, settlement with the merchant).").

Other courts have notably arrived at similar conclusions. *See, e.g., Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 483 (E.D.N.Y. 2020) (finding that the plaintiff stated a breach of contract claim because "[a]t the very least, the Court finds that the language is ambiguous because the Contract does not define at what point in time an item 'is presented,' *i.e.*, whether an item is presented at the point of authorization, when a consumer is engaging in a transaction with a merchant, or at the point of settlement, when the merchant is seeking payment from the bank."); *see also Precision Roofing of N. Fla. Inc. v. CenterState Bank*, No. 3:20-CV-352-J-39JRK, 2021 WL 3036354, at *2 (M.D. Fla. Feb. 22, 2021) ("In this case, Plaintiff sets forth a reasonable interpretation of the Terms and Conditions that would preclude Defendant from assessing overdraft charges on APPSN transactions. The language in other sections of the Terms and Conditions regarding how Defendant processes debit holds and imposes non-sufficient funds fees and overdraft fees arguably supports such an interpretation."); *Hash v. First Fin. Bancorp*, No. 1:20-CV-1321 RLM-MJD, 2021 WL 859736, at *7 (S.D. Ind. Mar. 8, 2021)

(denying bank's dismissal motion and explaining that "[n]one of the contract sections cited by First Financial unambiguously establish that the contract allows First Financial to determine overdraft fees at settlement on the type of transactions on which Mr. Hash alleges he was improperly charged overdraft fees.").

The instant matter presents analogous ambiguities to the above-cited cases about when a transaction is "paid," and if that payment occurs at authorization or settlement. Contrary to Defendant's assertions, the Agreement is not unambiguously clear about whether an OD/NSF Fee may be assessed on an APPSN Transaction, and Plaintiff could reasonably understand the Agreement's terms to preclude Flagstar from assessing overdraft fees when the initial transaction is made with a positive account balance. While Defendant's interpretation of the Agreement may be plausible here, so is Plaintiff's interpretation. *See Roberts*, 719 F. App'x at 36–37 ("[I]t would hardly be implausible for a consumer to think that 'a transaction' refers to the consumer's transaction with a merchant, such that the assessment of whether their account holds sufficient funds refers to the funds available at the time that the consumer-merchant transaction is authorized by" the defendant bank, not when the transaction is settled days later.). This Court must construe Plaintiff's First Amended Complaint in the light most favorable to her, *Lambert*, 517 F.3d at 439, and agrees that Flagstar's "preferred interpretation of the agreement makes little sense from the account-holder's point of view, as a reasonable consumer likely

considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed," *Roberts*, 719 F. App'x at 37.

Further, it is well-established in this Circuit that a contract that is subject to two reasonable interpretations is ambiguous and create an issue of fact precluding dismissal at this stage. *See Citizens Ins. Co. of Am.*, 449 F.3d at 694; *See In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019); *see also City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) ("The rule of law that has emerged from *D'Avanzo*, one which guides our consideration of this case, is that '[a] contract is ambiguous if the language is susceptible to two or more reasonable interpretations.'") (citing *D'Avanzo v. Wise & Marsac, P.C.*, 223 Mich. App. 314, 565 N.W.2d 915, 918 (1997)).  Under this precedent, the Court finds that the Agreement may be reasonably interpreted to mean that overdraft fees are assessed at the time of authorization, under Plaintiff's argument, or at the time of payment and settlement, under Defendant's argument.  Thus, the instant matter presents ambiguities about when OD/NSF Fees may be assessed in APPSN Transactions under the existing contractual language.  And because ambiguities exist, dismissal of the breach of contract claim is improper. *See Roberts*, 719 F. App'x at 36.  The Court thus declines to dismiss the breach of contract claim in relation to APPSN Transactions.

**2. The Assessment of Multiple OD/NSF Fees on Single Transactions**

Plaintiff also challenges Defendant's assessment of multiple OD/NSF Fees on single transactions that are repeatedly processed by third-party merchants. Plaintiff alleges that Defendant's conduct is not permitted per the Agreement's provisions, and that only one overdraft fee may be assessed for the transaction made in a negative balance, not per each processing request. However, Defendant disputes this interpretation of the Agreement and states, "contrary to Plaintiff's assertion, each presentment of an Item can incur its own OD/NSF fee." ECF No. 18, PageID.165.

This claim rests upon the term "item" as it is defined and utilized throughout the Agreement. It is first referenced at the beginning of the Agreement:

> **Items are intended to refer to any debits against your account** and include, but are not limited to, withdrawal tickets, checks, transfers, electronic debits, imaged debits, wire transfers, ATM debits, ACH debits, bill pay debits, photo copy debits, bank generated debits, and debit card point of sale transactions[.]
>
> Posted transactions are Items and/or deposits reflected in your Balance.
>
> Pending transactions are Items (for example, electronic debits, ACH debits, bill pay debits, bank generated debits), electronic/ACH deposits, and debit card authorizations/holds that have been received by the bank but not yet posted to your Balance.

ECF No. 14-1, PageID.100 (emphasis added). Defendant avers that this provision makes clear that an "item" can include two separate presentments of the same transaction. ECF No. 18, PageID.165 ("Based on the definition expressly provided

by the Agreement, an 'item' can be an ACH debit, and then an entirely new 'item' can be the same ACH debit presented as a new transaction.").  This argument is purportedly supported by additional language later in the Agreement:

> We may determine whether your Available Balance is sufficient to pay an Item at any point between (1) **the time an Item is presented to us** or we receive notice regarding the Item and (2) the time the Item is returned.

ECF No. 14-1, PageID.104 (emphasis added).  Under Defendant's interpretation, this provision clearly indicates that the presentment of an "item"—which may include the same transaction presented multiple times—may incur multiple OD/NSF Fees.

Plaintiff, however, highlights other language that supports her claim that the Agreement's definition of "item" is ambiguous as to whether it becomes a new item upon reprocessing by a merchant.  *See* ECF No. 20, PageID.228.  The Agreement provides, for example, that:

> We may refuse to pay an overdraft item at any time even though we may have previously paid overdrafts for you. For example, we typically do not pay overdraft items if your account is not in good standing as defined above, or, if based upon our review of your account management, we determine that you are using Bounce Protection excessively. **You will be charged an NSF fee for each item returned.**

ECF No. 14-1, PageID.108 (emphasis added).  Additional provisions in the Agreement also state:

> Overdrafts above and beyond your established Bounce Protection Limit may result in checks or other items being returned to the payee. **The Non-Sufficient Fee (NSF) will be charged per item and assessed to your account.** An OD/NSF notice will be sent to notify you of items paid and/or returned. If the account is overdrawn, it may be subject to the current Consecutive Days Overdrawn (OD) fee.

*Id.* at PageID.113. Plaintiff thus asserts that the "each item" and "per item" language presents, at the very least, an ambiguity as to whether Flagstar can charge multiple OD/NSF Fees on the same transaction.

As with the APPSN Transactions litigation, numerous federal courts around the country have overwhelmingly permitted claims premised on ambiguous uses of the term "item" to proceed in cases against financial institutions. This Court finds particularly persuasive the analysis in *Perks v. TD Bank*, 444 F. Supp. 3d 635 (S.D.N.Y. 2020), for example, which looked at an analogous contractual provision that stated "An 'item' includes a[n] . . . ACH transaction . . . and *any other instruction* or order for the payment, transfer, deposit or withdrawal of funds." *Id.* at 640 (emphasis added). The *Perks* court held that it was plausible to read this provision as authorizing the defendant bank to only charge a single OD/NSF Fee, even though the bank's interpretation permitting multiple OD/NSF Fees was also a reasonable interpretation. *Id.* Here, Flagstar attempts to make the same argument by emphasizing the word "any" in the definition of "item" as evidence that each presentment can be individually considered an "item." ECF No. 18, PageID.164-165. However, the Court agrees with the *Perks* analysis that Plaintiff's construction

of the Agreement is also reasonable, and "the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is a part of the same initial ACH transaction, and that ambiguity must be read in favor of Plaintiff[] at this stage." *Perks*, 444 F. Supp. 3d at 640.

This conclusion has been repeatedly reached in additional cases that guide this Court's decision. *See Chambers v. HSBC Bank USA, N.A.*, No. 19 CIV. 10436 (ER), 2020 WL 7261155, at *4 (S.D.N.Y. Dec. 10, 2020) (allowing a breach of contract claim to proceed because "the proposed interpretations of 'item' by HSBC and Chambers are both reasonable based on" the contract between the parties.); *Wilkins v. Simmons Bank*, No. 3:20-CV-116-DPM, 2020 WL 7249030, at *1 (E.D. Ark. Dec. 9, 2020) ("The Court concludes that there is ambiguity in all this, and lurking in the Bank's 'per item' fee in particular. Is each try an item? Or is the entire transaction one item even though multiple tries are involved?"); *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229-HRH, 2020 WL 1866261, at *4 (D. Alaska Apr. 14, 2020) (finding that "[b]oth parties' interpretations of the Account Agreement are plausible" as to whether the bank may charge multiple NSF fees each time a merchant presents the transaction for payment.).

Here, the Court looks to the specific language of this Agreement between Gardner and Flagstar and finds that both interpretations of the Agreement and the definitional breadth of "item" are plausible, and thus an ambiguity exists. While

Defendant argues that "Flagstar's assessment of an NSF/OD fee is tied to the *circumstances* surrounding each item (i.e., whether the item is returned), rather than the item itself," an ambiguity still exists as to whether "item" can mean more than one presentment.  ECF No. 23, PageID.506 (emphasis in original).  This is in contrast to *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019), cited by Defendant, which contained more express contractual language placing a customer on notice that multiple fees may be assessed on the same underlying transaction.  *Id.* at *4 ("The next sentence warns: 'A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item.' Taken together, these sentences clearly provide that Navy Federal may return a debit item, such as an ACH debit, if there is not enough money in the account, and, if there is a return, Navy Federal may charge the member a fee for that returned debit transaction.") (internal citations and parentheticals removed).

Defendant's Agreement cannot be said to have the same clarity as the *Lambert* contract.  Moreover, multiple courts have observed that when "'other courts have found similar contractual language to be both unambiguous and ambiguous,' such case law is of limited guidance on a motion to dismiss." *Chambers*, No. 19 CIV. 10436 (ER), 2020 WL 7261155 at *5 (citing *Coleman*, No. 19 Civ. 229 (HRH), 2020 WL 1866261 at *5).  Thus, this Court maintains that the Agreement's language in

the instant case lends itself to two reasonable interpretations of "item" and whether the Agreement permits multiple OD/NSF Fees on all presentments or resubmissions associated with a single transaction.  Accordingly, a contractual ambiguity exists precluding dismissal of the breach of contract claim.[1]  *See Citizens Ins. Co. of Am.*, 449 F.3d at 694.

### B. Conversion (Count II)

Plaintiff's second claim alleges that Defendant has unlawfully withdrawn funds and converted it for personal gain in its assessment of OD/NSF Fees on various transactions.  Conversion is defined under Michigan law as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992).  Defendant argues that Plaintiff cannot maintain this claim because Michigan law precludes conversion claims when the parties are in a debtor-creditor relationship, and there is no tort duty established separate from the existing contractual duties.  The Court agrees with Defendant Flagstar.

---

[1] Plaintiff also pleads a breach of the implied covenant of good faith and fair dealing in the alternative to her breach of contract claim.  *See* ECF No. 14, PageID.91.  At this stage of the litigation, the Court will allow Plaintiff to proceed with this claim in the alternative as permitted by Federal Rule of Civil Procedure 8.  FED. R. CIV. P. 8(a)(2).  The Court declines to engage in a merits determination of the alternative claim at this time.

Here, Plaintiff's First Amended Complaint alleges that the "money Defendant held for Plaintiff and class members were held in identifiable accounts and was still the property of Plaintiff and class members," and that "[t]hese deposits were bailments and the Defendant was a bailee."  ECF No. 14, PageID.94.  However, as Defendant points out, the Sixth Circuit has held that conversion claims may not be maintained between a financial institution, like Defendant, and a depositor, like Plaintiff:

> Under Michigan law, a breach of a contractual obligation cannot support an action in tort absent the "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 559 N.W.2d 647, 658 (1997).  The relationship between a bank and its depositor is one of a debtor-creditor.  *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.,* 178 Mich.App. 570, 444 N.W.2d 210, 213 (1989).  Accordingly, a claim of conversion is only sustainable if the defendant bank obtained the money without the owner's consent to the creation of that debtor-creditor relationship.  *Comerica Bank v. Allied Commc'ns, Inc.,* 1997 WL 33353282, at *2 (Mich.Ct.App. Mar. 14, 1997) (holding that a defendant bank could not be held liable for a claim of conversion arising from its allegedly improper set-off of funds from the customer's bank account to pay down a debt owed to the bank where the customer had consented to the creation of a debtor-creditor relationship by depositing money with the bank).

*Spizizen v. Nat'l City Corp.*, 516 F. App'x 426, 429 (6th Cir. 2013).

The cases cited by Plaintiff do not support the argument that her conversion claim can be maintained under Michigan law.  The Michigan cases referenced in her Response discuss conversion claims that may arise from separate and distinct legal duties outside contractual obligations—which is not the case here.  *See Check Reporting Servs., Inc. v. Michigan Nat. Bank-Lansing*, 191 Mich. App. 614, 617,

22

478 N.W.2d 893, 896 (1991) (affirming grant of summary judgment on the conversion claim when the defendant "had the right to use the funds on deposit in [the plaintiff's] check purchase account as a setoff against [the plaintiff's] obligations."); *Hansman v. Imlay City State Bank*, 121 Mich. App. 424, 426, 328 N.W.2d 653, 654 (1982) (discussing the right to set off a plaintiff's checking account funds against the plaintiff's indebtedness to the financial institution and holding that questions of fact exist about the plaintiff's account ownership). In the instant matter, Plaintiff's cause of action does not involve Flagstar's right to set-off funds. Instead, her claims clearly stem from an alleged breach of contractual obligations under the Agreement, and there are no duties separate and distinct from these obligations to support a conversion claim arising in tort.

Further, courts within this District have dismissed conversion claims in nearly identical cases. In *Lossia*, for example, the district court found that the plaintiffs consented to the creation of a debtor-creditor relationship when they opened and deposited money into a checking account at the financial institution. *Lossia v. Flagstar Bancorp, Inc.*, No. 15-12540, 2016 WL 520867, at *3 (E.D. Mich. Feb. 10, 2016) (Steeh, J.). The district court noted that even though "plaintiffs contend that they did not consent to a debtor-creditor relationship regarding the monies on which the fees were assessed[,]" the "proper focus of the consent is not the particular

monies deposited, but the intent to form a debtor-creditor relationship by depositing money with the bank." *Id.*

The same is true here; Plaintiff entered into a debtor-creditor relationship with Flagstar when she opened her checking account, deposited money into her account, and proceeded to make various transactions using those funds.  Furthermore, the claims within Plaintiff's First Amended Complaint are predicated on the Agreement between the parties, which forms the basis of Defendant's contractual obligations.  Plaintiff has failed to plead a tort duty owed by Defendant that is separate and distinct from the parties' contractual relationship.  Because "a tort action will not lie when based solely on the nonperformance of a contractual duty," Plaintiff's conversion claim must therefore be dismissed.  *Lossia v. Flagstar Bancorp, Inc.*, No. 15-12540, 2016 WL 520867, at *3 (E.D. Mich. Feb. 10, 2016) (quoting *Fultz v. Union-Com. Assocs.*, 470 Mich. 460, 466, 683 N.W.2d 587, 591 (2004)).

Accordingly, Defendant's Motion to Dismiss will be granted as to Plaintiff's conversion claim.

## V. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss [#18] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

s/Gershwin  A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  August 23, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 23, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager