UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERONICA GARDNER and CALVIN
MORGAN
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

                v.

FLAGSTAR BANK, FSB,

                Defendant.

_____/

Case No. 20-12061

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER: (1) DENYING PLAINTIFFS' MOTION PREMITTING CALVIN MORGAN TO CONTINUE LITIGATING THIS ACTION ON BEHALF OF D&C ENTERPRISE GROUP LLC [ECF NO. 109]; AND (2) OVERRULING OBJECTION TO ORDER ON MOTION TO COMPEL [ECF NO. 128]

## I.    Introduction

On March 28, 2023, Plaintiffs Veronica Gardner and Calvin Morgan filed a Second Amended Class Action Complaint (the "Complaint") "on behalf of themselves and all similarly situated consumers." See ECF No. 97. It names Flagstar Bank, FSB as the Defendant ("Defendant" or "Flagstar"). The Complaint alleges two Counts: Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing ("Count I"); and Conversion under MCL 600.2919(a)

("Count II"). The two putative Classes are comprised of "over 100 members each." ECF No. 97, PageID.1929. They seek damages, restitution, and injunctive relief; the "aggregate sum" of the purported damages for each proposed class exceeds $5 million. *Id.* These claims arise from two alleged "fee maximization practices" which Plaintiffs say violate the deposit agreement they have with Flagstar. ECF No. 97, PageID.1936. The Court will describe these practices in greater detail *infra* as part of the "Factual and Procedural Background" section below (Section II).

Before the Court are two matters. First, Plaintiffs filed a "Motion for Ratification and Additionally, or in the Alternative, to Join D&C Enterprise Group LLC as a Party" on July 5, 2023 (the "Motion for ratification"). See ECF No. 109. Defendant responded on July 17, 2023, and Plaintiffs replied on July 24, 2023. Second, Plaintiffs filed a pleading entitled, "Plaintiffs Objections To Magistrate Judges Order Denying Plaintiffs Motion To Compel Production Of Plaintiff Morgans Account Documents From Defendant Flagstar Bank" (Plaintiffs' "Objections"). See ECF No. 126. Defendants responded on October 13, 2023, and Plaintiffs replied on October 20, 2023. The Court held oral argument for the Motion and Objections on December 11, 2023. The Motion and Objections are fully briefed.

For the reasons set forth below, the Motion for ratification is **DENIED** and Plaintiffs' objections are **OVERRULED**.

2

## I.     Factual and Procedural Background

Plaintiffs Gardner and Morgan had checking accounts with Flagstar. This relationship was governed by Account Agreement Documents (the "Agreement"), which includes definitions, policies, procedures, a disclosure guide, and continual updates to that guide. See ECF No. 97. Specifically, the Agreement contains various provisions regarding the assessment and payment of overdraft fees and insufficient funds fees (referred to by the parties as "OD/NSF Fees"). See ECF No. 97-1.

Plaintiffs assert claims in connection with two "fee maximization practices." The first alleged fee maximization practice encompasses Flagstar's policy of charging OD fees on "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions") as part of its "Bounce Back Protection Program." ECF No. 97, PageID.1930. This occurs when an "everyday debit transaction" is authorized on an account with a positive available balance, a temporary debit authorization hold is then placed on the account in an amount equal to the amount of the debit transaction, and the transaction is later presented for payment (or "settled") when the account's available balance is negative due to intervening transactions that occur before the transaction is settled, which could take two days. *Id*.; ECF No. 105-5, PageID.2297.

The Court will refer to Flagstar's practice of assessing OD fees on APPSN transactions as the assessment of "APPSN Fees." Plaintiff emphasizes that "customers' accounts will always have sufficient funds available to cover" the initial transaction made with a positive balance "because Flagstar Bank has already sequestered these funds for payment." ECF No. 97, PageID.1930. Notwithstanding the initial positive available balance that existed when the funds were temporarily held, Plaintiff states that "Flagstar Bank later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance." *Id*. This practice, Plaintiff avers, is barred by the terms of the Agreement regarding overdraft fee assessments. However, Defendant maintains that the Agreement and February 2018 updates to the disclosure guide makes clear that an OD fee may be assessed when a temporary debit authorization hold settles into a negative balance. Thus, with regard to the first alleged fee maximization practice, the parties dispute whether the Agreement indicates that OD/NSF Fees will be assessed either at the point of the transaction's (1) initial authorization, or (2) when the hold is released and the transaction is settled.

The second practice pertains to Flagstar's policy of charging multiple non-sufficient funds ("NSF") fees when an item is declined for payment due to an account's negative balance and is later presented to the bank again; Flagstar charges an NSF fee each time the item is presented by a merchant and declined by

the bank due to insufficient funds. ECF No. 97, PageID.1942. The Court will refer to this practice as "Item Presentment Fees".

It is undisputed that Flagstar also has a third practice of assessing OD fees on "recurring debit card point-of-sale transactions", which are not "everyday debit card transactions" and are thus properly classified as non-APPSN transactions. ECF No. 105-5, PageID.2299. According to the affidavit of Flagstar Retail and Commercial Operations Director Taryn Barlow, recurring debit card point-of-sale transactions are settled immediately and "are not preauthorized or subject to a Temporary Debit Authorization Hold as an alleged APPSN transaction would be." *Id*. Morgan incurred six OD fees in connection with recurring debit card point-of-sale transactions, a practice that is not challenged in the SAC. *Id*. at PageID.2298.

The dispute regarding the second alleged fee maximization practice centers on the definition of the term "item" in the Agreement. Plaintiff alleges that the Agreement "expressly states that [only] a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments," and therefore the "same 'item' on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff Gardner took no action to resubmit them." ECF No. 97, PageID.1945. Defendant maintains, however, that it did not breach the Agreement because the Agreement and February 2018 updates clearly state that a merchant's request for payment against

an account with a negative balance may generate NSF fees. ECF No. 105, PageID.2190.[1]

Plaintiffs define the two proposed classes as follows: (1) "All accountholders who, from October 9, 2015 through the date of class certification, were charged OD Fees on APPSN transactions on a Flagstar checking account (the 'OD Fee Class')"; and (2) "[a]ll accountholders who, during the applicable statute of limitations, were charged more than one fee on the same item on a Flagstar checking account (the 'Multiple Fee Class')." ECF No. 97, PageID.1950. The Court will describe the factual background as it pertains to the Account Agreement at issue in this case and its application to Plaintiffs Gardner and Morgan's accounts.

### 1. Plaintiff Gardner's Account

In February 2016, Plaintiff Gardner opened a consumer checking account with Flagstar. She incurred four APPSN fees in November 2019, totaling $144. Gardner also claims that Flagstar assessed Item Presentment Fees against her account for transactions that occurred in December 2019. She was assessed four

---

[1] The alleged breaches referenced *supra* are discussed in Defendant's Motion for Summary Judgment, which will be addressed in a forthcoming Opinion and Order. However, these alleged breaches are relevant to the Court's analysis pertaining to the Motion and Objections presently before the Court.

NSF fees on a transaction from a merchant named "Progressive Lease." The transaction was presented by the merchant and rejected by Flagstar a total of four times. Flagstar alleges that, "once Plaintiff Gardner received notices from Flagstar that her account was in a negative position, she did nothing to stop subsequent recurring withdrawals on her account by Progressive Lease." ECF No. 105, PageID.2185.

### 2. Plaintiff Morgan's Accounts

Plaintiff Morgan has maintained three Flagstar checking accounts: an individual account he opened on May 14, 2010; a joint account opened on June 13, 2018; and a business account opened in 2013-2014 for Morgan's single member Michigan limited liability company, D&C Enterprise, LLC ("D&C"). Morgan's personal account is still open and is governed by the Agreement referenced *supra*. D&C's business account was governed by a different agreement, which Plaintiffs claim is materially similar to the consumer account agreement. Although Morgan incurred OD fees, it is undisputed that Morgan never incurred either of the challenged APPSN Fees or Item Presentment Fees on his personal or joint accounts. Instead, Flagstar assessed at least one APPSN Fee in the amount of $36.00 against D&C's business account on June 11, 2020.

### 3.  Relevant Procedural Posture

This case is three years old. On May 26, 2022, Flagstar filed a motion for leave to file two summary judgment motions, one dedicated to Gardner's specific claims—Gardner was the sole named plaintiff at that time—and one dedicated to class-wide claims. ECF No. 57, PageID.955. Plaintiffs then moved for leave to amend the complaint. (ECF No. 62). They asserted that Flagstar's arguments as to Gardner's specific claims lacked merit, but that out of "an abundance of caution" they were moving to add Morgan as a named plaintiff, contending that his claims were identical to those in the pending suit and "typical of the claims of the proposed Class because they are based on the same contract documents and legal theories . . ." *Id.*, PageID.1012-13, 1017; ECF No. 97, PageID.1951.

Plaintiffs also argued that permitting them to add Morgan as a plaintiff would cause "minimal change with minimal prejudice" to Flagstar because "the theory of the case will not change. All that will occur is a putative class member will be added as a named plaintiff . . ." ECF No. 62, PageID.1016. At oral argument on Plaintiffs' motion for leave to amend, Plaintiffs similarly argued that Morgan "has the exact same [APPSN] claims as Ms. Gardner does." (ECF No. 96, PageID.1909, 1911 (noting that Morgan "only is being offered for the APPSN transaction[s]" claim)). In the SAC, Plaintiffs identified a single transaction, alleging that, "on June 11, 2020, Plaintiff Morgan was assessed OD Fees for debit

8

card transactions that settled on those days, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff Morgan was assessed OD Fees." ECF No. 97, PageID.1942. However, as the parties are well aware by now, the June 11, 2020 APPSN fee was assessed against D&C's account.

Based on these specific representations, the Court granted Plaintiffs' motion for leave to amend, noting that "it does not appear that adding a class representative plaintiff [i.e., Morgan] would significantly alter the complexion of this case" because it "will not change Plaintiff's class claims or theories of liability. Morgan's cause of action related to [the challenged] transactions is the same as that of Gardner as well as the putative class." ECF No. 94, PageID.1891-92. The Court also ordered Flagstar to withdraw its Motion for Summary Judgment—which pertained solely to Gardner—so that it may file a motion addressing both Gardner and Morgan. See ECF No. 94.

On June 9, 2022, Plaintiffs filed a Motion to Compel, averring that Flagstar failed "to produce contractual documents such as the Account Agreements governing Mr. Morgan's business account, communications regarding Mr. Morgan's business account, and the transaction data associated with the fees he incurred on this account." ECF No. 100, PageID.2060.

On June 22, 2023, before filing a response to the motion to compel, Flagstar moved for summary judgment with respect to Plaintiffs Morgan's and Gardner's claim. The summary judgment motion is still pending and asserts that Morgan suffered no injury and lacks standing because Flagstar never assessed an APPSN fee or Item Presentment fee against his personal or joint accounts. ECF No. 105, PageID.2173. Rather, Flagstar argues that "Plaintiff Morgan has averred that the APPSN fee alleged in the SAC was assessed on a business account owned by D and C Enterprise Group LLC (of which he is the alleged owner)" and "business owners (like Plaintiff Morgan) do not have standing to enforce the rights of the business (here, the LLC)." *Id*., at PageID.2204.

As Magistrate Judge Grand notes in his Order Denying Plaintiffs' "Motion to Compel Production of Plaintiff Morgan's Account Documents From Defendant Flagstar Bank", "Plaintiffs are actually asserting a different claim as to Morgan, which is based on a different theory of liability." ECF No. 127, PageID.4028. Indeed, Plaintiffs do not dispute that neither of the two "fee maximization practices" challenged here were assessed against Morgan's personal or joint accounts. He appears to assert his claim based solely on Flagstar's assessment of an APPSN fee against D&C's business account. Plaintiffs object to Judge Grand's Order. In addition to Plaintiffs' Motion for Ratification, the Court will discuss those objections below.

## II.     Discussion

### A. ECF No. 109: Plaintiffs' Motion for Ratification and Additionally, or in the Alternative, to Join D&C Enterprise Group LLC as a Party.

Plaintiffs Gardner and Morgan filed the above referenced Motion for Ratification pursuant to Fed. R. Civ. P. 17(a)(3) ("Rule 17"). They request an order from the Court "permitting Plaintiff Morgan to continue litigating this action on behalf of [D&C] with its ratification, and additionally, or in the alternative, to join D&C, as a party to this litigation." ECF No. 109, PageID.2752.

### 1.  Applicable Law

Rule 17(a)(3) provides that "the court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." After ratification, joinder, or substitution, "the action proceeds as if it had been originally commenced by the real party in interest." *Id*. This means that the ratification will relate back to the date the lawsuit was initially commenced.

To grant relief under Rule 17(a)(3), a "court must, at a minimum arguably have subject matter jurisdiction over the original claims." *Zurich Ins. Co. v. Logitrans, Inc*., 297 F.3d 528, 531 (6th Cir. 2002). "In order for a federal court to

exercise jurisdiction over a matter, the party seeking relief must have standing to sue. *Id*. (quoting *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir.1996)) (internal quotation marks omitted). "Standing has both constitutional and prudential dimensions." *Id*. As the Sixth Circuit has noted, "there is a degree of confusion in drawing a line between Article III standing and the real-party-in-interest requirement" courts must "distinguish between these two distinct issues." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 732 (6th Cir. 2016).

Under Article III, a plaintiff has standing when "it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent," that injury must also be "fairly traceable to the challenged action of the defendant," and the Court must find it "likely ... that the injury will be redressed by a favorable decision." *Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*, 596 F. Supp. 3d 925, 931 (E.D. Mich. 2022) (Drain, J.) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotations omitted). In addition, it is well established that a plaintiff must "assert his own legal rights and interests and cannot rest his claim for relief on the legal rights or interests of third parties." *Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d 940, 948 (E.D. Mich. 2017) (*Warth v. Seldin*, 422 U.S. 490, 495 (1975) (internal quotations omitted).

Plaintiffs bear the burden of establishing standing, and they must support

each element "in the same way as any other matter on which the plaintiff bears the burden of proof, that is, with the manner and degree of evidence required at successive stages of the litigation[,]" here the case has reached the summary judgment stage. *Schickel v. Dilger*, 925 F.3d 858, 865 (6th Cir. 2019) (quoting *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (internal quotations omitted).

On the other hand, with regard to ratification, "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law. The real party in interest analysis turns on whether the substantive law creating the right being sued upon affords the party bringing suit a substantive right to relief." *McLeod-Wisienski v. Doe #1*, No. 2:18-CV-11671-TGB, 2019 WL 7020679, at *1 (E.D. Mich. Dec. 20, 2019) (quoting *Cranpark*, 821 F.3d at 730); *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39, 42–43 (6th Cir.1994) (citations omitted). Of course, the governing substantive law in a diversity action is state law and, in this case, Michigan law. See *Id.* (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). "The purpose of Rule 17 is to avoid injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *White House Servs. v. Allstate Ins*. Co., No. 17-CV-12672, 2018 WL 6527693, at *2 (E.D. Mich. Dec. 12, 2018). The rule is to be applied leniently when an honest mistake has been made in selecting the

proper plaintiff. *Id*.

## 2. Analysis

Flagstar argues that the Court lacks subject matter jurisdiction, noting that, "this Court cannot even entertain the Plaintiff's Rule 17 motion because Morgan has no Article III standing to make this motion before this Court." ECF No. 116, PageID.3855. It relies on *Zurich Ins.*, where the Sixth Circuit held that a plaintiff may not move for ratification when it does not have Article III standing. *Zurich Ins*. 297 F.3d at 532-33

In *Zurich Ins.*, defendant Lotigrans, Inc. provided services to Lear Corporation in connection with Lear's manufacture of automobile seats. *Zurich Ins*., 297 F.3d at 530. A fire occurred at a warehouse that defendant ACI had leased to defendant Logitrans. *Id*. The fire destroyed a significant portion of Lear's property. *Id*. Lear was insured by third party American Guarantee, who paid Lear's claims for damages. *Id*. American Guarantee became Lear's purported subrogee regarding any claims Lear had against the defendants arising from the fire. *Id*. Although plaintiff Zurich Switzerland had never issued an insurance policy nor paid out any money to Lear, Zurich Switzerland nonetheless brought the lawsuit as Lear's purported subrogee. *Id*. American Guarantee was not named a party in the complaint. *Id*. Just before trial, Logitrans filed a motion in limine, in which it

asserted that Zurich Switzerland was not Lear's true subrogee. *Id*. Zurich Switzerland did not dispute that it was not the proper plaintiff and responded by filing a motion to substitute American Guarantee as the real party in interest pursuant to Rule 17(a). *Id*. Subsequently, Defendant ACI moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant Logitrans joined in that motion. *Id*.

The district court denied the motion to substitute, noting that Zurich Switzerland failed to show that the prosecution of the case in Zurich Switzerland's name instead of American Guarantee's name was an understandable mistake. *Id*. After concluding that plaintiff Zurich Switzerland was not a proper party, the court dismissed its claims pursuant to Rule 12(b)(6). *Id*. Because the statute of limitations had run on American Guarantee's claims, the denial of the motion to substitute prevented American Guarantee from pursuing its claims against the defendants. *Id*. The Sixth Circuit upheld the district court's decision denying the motion to substitute, finding that Zurich Switzerland did not have standing to bring the suit because it did not suffer an injury. *Id*. The Sixth Circuit reasoned that "[a]n attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue." *Id*. at 532. In the court's view, "American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now

benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period." *Id*.

Only the APPSN fee and Item Presentment fee practices are challenged in the complaint. Thus, Morgan may satisfy the Article III's standing requirements only by alleging injuries that are "fairly traceable" to those practices. In these circumstances, *Zurich Ins*., supports Flagstar's position because, similar to the plaintiff in that case, Morgan does not cite evidence showing that his consumer account incurred either an APPSN fee or an Item Presentment Fee and thus Morgan incurred no injury traceable to Flagstar's conduct as challenged in the complaint. His Motion points to no evidence that disputes the conclusions reached in Barlow's declaration. See ECF No. 105-5, PageID.2298-98 (Barlow declaration stating that Morgan was assessed OD fees on "recurring debit card point-of-sale transactions" which "are not preauthorized or subject to a Temporary Debit Authorization Hold as an alleged APPSN transaction would be" and that "Morgan's pre-transaction balance was already in the negative before the recurring debit card transaction on which the overdraft fee was assessed"). [2]

Plaintiffs rely on the affidavit of database expert Arthur Olsen, who declares

---

[2] The Court notes that, although Morgan did not appear to dispute this point in his briefing on the Motion for Ratification or Summary Judgment, he averred at oral argument that his personal account was assessed APPSN fees, so the Court will address it now.

that Flagstar, "likely assessed APPSN fees against Plaintiff Morgan's accounts." ECF No. 112-6, PageID.2993. The Morgan "accounts" to which Olsen refers appear to include D&C's business account because he states in the next sentence that, "it is my understanding from Plaintiff's counsel that Defendant has thus far refused to produce the statements of Mr. Morgan's solely owned company D & C, and also refused to produce . . . documents and data which would be helpful to assist in this determination." *Id*. Records pertaining to Morgan's personal and joint accounts have been produced, discovery has concluded, the case has reached the summary judgment stage, and no evidence affirmatively demonstrates that APPSN or Item Presentment fees were assessed against either of Morgan's personal or joint accounts, in addition to his D&C's business account. Thus, Morgan does not allege an injury in fact in connection with either of those accounts.

While Morgan declares that "between 2015 and 2020[,] [he] transferred money out of [his] personal Flagstar account on five to ten occasions to cover overdraft fees that Flagstar assessed against [] D & C['s] business account," ECF No. 108-7, PageID.2749 (Supplemental Declaration of Plaintiff Morgan), he does not allege in any concrete or particularized way that he transferred money out of his account to cover APPSN fees or Item Presentment fees assessed against D&C's business account. Further, Olsen's declaration does not amount to an assertion that Morgan transferred money from his personal accounts to cover D&C's APPSN

fees. Finally, Plaintiffs point to no authority in support of the proposition that one who voluntarily suffers financial harm on behalf of another—when under no obligation to do so—has Article III standing to assert a claim against a defendant who allegedly caused that harm.

As such, Morgan fails to demonstrate that he suffered a "concrete" or "particularized" injury-in-fact that is "fairly traceable" to Flagstar's conduct as alleged in the complaint. Further, even if Plaintiffs prevail in this lawsuit, none of them may recover for OD/NSF fees assessed for non-APPSN transactions. Thus, Morgan also fails to show that his injury is "likely to be redressed" by a favorable decision in this action.

Plaintiffs also assert that "[t]he sole member and manager of a single member LLC such as Plaintiff Morgan sustains an injury in fact for Article III standing purposes by virtue of financial harm to the LLC." ECF No. 118, PageID.3903. They rely on *White House Servs. v. Allstate Ins*. Co., No. 17-CV-12672, 2018 WL 6527693, at *3 (E.D. Mich. Dec. 12, 2018) (Steeh, J.).

In *White House Servs*., the district court reviewed the issue of whether plaintiff White House Services had standing to move for ratification to litigate the action on behalf of White Custom Services ("Custom"). *Id*. at *4. The court distinguished *Zurich Ins*. and concluded that White House Services had standing

because it was a closely held corporation who shared the same sole shareholder as Custom and the record demonstrated that it would independently suffer financial harm based on the defendant insurance company's alleged failure to pay allowable expenses to Custom. [3] *Id*. Specifically, the court found that, if Custom was not paid by defendant, then plaintiff White House Services would also suffer financial harm. *Id*. The Court relied on evidence demonstrating that plaintiff and custom were treated as a single taxpayer and "[p]laintiff file[d] taxes on behalf of itself and Custom." *Id*. Plaintiff was the "controlling member who determine[d] allocation of proceeds issued by insurance companies between the two entities, regardless of which provides the services." *Id*. Plaintiff had "a financial interest in any amount received by Custom." *Id*. Under these circumstances, the court in *White House Servs*. held that the plaintiff had standing to move for ratification with Custom as the real party in interest. *Id*.

By contrast, Morgan does not allege any financial harm that resulted to himself by way of any APPSN and Item Presentment fees assessed against D&C's business account. As Flagstar points out, Morgan cannot be held personally responsible for the alleged APPSN fee assessed against D & C's account. See ECF No. 116, PageID.3857 (Citing M.C.L. § 450.4501(4) ("Unless otherwise provided by law or in an operating agreement, a person that is a member or manager, or

---

[3] Custom was also closely held corporation and was the real party in interest.

both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company.")); See also ECF No. 128-4, PageID.4122 (D&C is an LLC and the Business Account Agreement states that only "business account ownership using a personal Social Security Number (e.g. Sole Proprietor and/or Doing Business As Accounts)" will be "jointly and severally liable" for any "overdrafts"). Morgan does not allege that he is in anyway obligated to pay D&C's debts. He also fails to allege a financial interest in any of D&C's property or in any amount assessed against D&C's account. Accordingly, Morgan fails to demonstrate that he suffered a "concrete" or "particularized" injury-in-fact that is "fairly traceable" to Flagstar's conduct as alleged in the complaint. As such, he fails to satisfy Article III's standing requirements.

Because Morgan does not have standing, he cannot bring a Rule 17 Motion and the Court need not address the ratification requirements under Rule 17(a). Further, D&C will not be joined in this action as a named plaintiff because discovery pertaining to the named Plaintiffs in this action has closed and the LLC is already a purported member of the OD fee class. Morgan's Motion for Ratification is **DENIED**.

**B. Plaintiffs' Objections to Magistrate Judge's Order Denying Plaintiffs' "Motion to Compel Production of Plaintiff Morgan's Account Documents from Defendant Flagstar Bank"**

Plaintiffs object to the factual findings and legal conclusions of the Magistrate Judge's Order Denying Plaintiffs' "Motion to Compel Production of Plaintiff Morgan's Account Documents From Defendant Flagstar Bank" (ECF No. 100), ECF No. 127, PageID.4026 ("Order"). Plaintiffs seek to pursue discovery related to OD Fees charged to D&C's account. ECF No. 127, PageID.4034.

As a non-dispositive matter, the review of a magistrate's discovery order is governed by the "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72(a). The United States Supreme Court and the Sixth Circuit have held that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard." *Id*. at 538 (quoting *Haworth, Inc. v. Herman Miller, Inc*., 162 F.R.D. 289, 291 (W.D. Mich. 1995)); *Roby v. Bloom Roofing Sys*., 343 F.R.D. 487,

490 (E.D. Mich. 2023) (Drain, J.). The Court's review under the "contrary to law"
standard requires the exercise of independent judgment in determining whether the
magistrate judge's legal conclusions "contradict or ignore applicable precepts of
law, as found in the Constitution, statutes, or case precedent." *Roby*, 343 F.R.D.
487 at 490; *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), aff'd, 19
F.3d 1432 (6th Cir. 1994); *Draughn v. Bouchard*, 2017 WL 3048667, at *1 (E.D.
Mich. July 19, 2017).

Even if Morgan had standing to bring the instant Objection, the Court would
find that Judge Grand's factual determinations are not clearly erroneous, and his
legal conclusions do not contradict or ignore applicable precepts of law. As Judge
Grand observed,

> while [discovery pertaining to D & C's records] may be relevant to
> the breach of contract claims as Morgan now characterizes them [in
> his Motion to Compel] – i.e., that he was damaged (a) by having
> 'transferred money out of [his] personal Flagstar account . . . to cover
> overdraft fees that Flagstar assessed against D&C's Flagstar account
> (ECF No. 108-7, PageID.2749), or (b) by being legally responsible for
> those fees due to a provision in Flagstar's contract with D&C – those
> claims differ significantly from the specific and narrowly-
> circumscribed claim Plaintiffs were allowed to bring by adding
> Morgan as a named class plaintiff.

ECF No. 127, PageID.4035.

In denying the Motion to Compel, the Magistrate Judge relied on the
proportionality considerations stated in Fed. R. Civ. P. 26(b)(1), which provides

that, "unless otherwise limited by court order, the scope of discovery" is limited to any:

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, amount in controversy, the parties' relative access to the relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Judge Grand also relied on Rule 1, which provides that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

He found that nearly all the proportionality considerations weighed in Plaintiffs' favor and that, "if the claim before the Court was D&C's, or if this was a class action on behalf of individuals who transferred money to their business accounts to cover allegedly improper fees imposed against the businesses, the requested documents would also be important to the 'issues at stake in the action' and their production would outweigh any burden or expense on Flagstar." ECF No. 127, PageID.4032-33. Judge Grand ultimately ruled, however, that the records requests were outside of the scope of the plaintiff specific discovery permitted by the Court, and the discovery request was improper given the three-year age of the

case, and the fact that amendment was granted by this Court to add Morgan as a named Plaintiff—after two years of litigation—only because Plaintiffs represented that Morgan's claims were identical to Gardner's.

In Judge Grand's assessment, "[o]rdering Flagstar to produce the requested documents at this stage of the proceedings would require the parties to take the discovery process in a whole new direction, and confront new legal arguments involving contract, corporate, and agency law that are not present in Gardner's claims." ECF No. 127, PageID.4035. He correctly concluded that "even if the requested documents [we]re relevant to Plaintiffs' present construction of Morgan's claim in the SAC, they are not relevant to the specific claim Plaintiffs were allowed to file when Judge Drain granted them leave to file the SAC." *Id.*

Plaintiffs object, arguing that "Defendant Flagstar represented to the Magistrate Judge that its consumer and business account agreements differed, but did not provide a copy of the business account agreement." ECF No. 128, PageID.4048. Plaintiff has now obtained a copy of the business account agreement outside of the formal discovery process and represents that the agreement is identical in every respect to the Consumer Account Agreement. *Id.* As such, Plaintiffs contend that, Judge Grand's Order "rests on the incorrect factual premise that the requested discovery would 'take this case i[n] a direction very different than the one authorized by Judge Drain when he allowed Plaintiffs to file the

24

SAC.'" ECF No. 128, PageID.4050 (quoting ECF No. 127, PageID.4029, 4031)). According to Plaintiffs, "given that the business and consumer account agreements are materially identical, it is likely that Plaintiffs Morgan and Gardner could adequately represent business accountholders in their capacity as individuals." ECF No. 128, PageID.4058.

Even if the Court were inclined to accept Plaintiffs' proposition that the consumer agreement and business agreement are identical, it would not render Judge Grand's factual findings clearly erroneous, and it would not leave the Court with the "definite and firm conviction that a mistake has been committed." Different legal theories and defenses become available to Flagstar when a plaintiff asserts a claim based on financial harm incurred by an LLC. Further, as stated *supra*, since Morgan is a named Plaintiff not being permitted to litigate this case on D&C's behalf, Morgan cannot assert a claim based on fees assessed against D&C's business account. Additionally, Plaintiffs filed their Motion to Compel during a period of court ordered *Plaintiff specific* discovery. D&C is not a named Plaintiff, and its records have no bearing on Morgan's individual claim. See ECF No. 130, PageID.4289 (Plaintiff's reply brief stating that, "[t]o the extent the Defendant might have believed Plaintiffs would try to assert a claim in this litigation based on the transfer of money from [Morgan's account] to cover fees assessed [D & C's account], that is not correct; Plaintiffs are not arguing that.").

Plaintiffs are not entitled to the requested discovery at this time because D & C's records will only become relevant when *class-wide discovery* commences, if Flagstar files its second motion for summary judgment pertaining to class-wide issues, and if the case reaches the class certification stage. Additionally, the question whether D & C may be viewed as a potential member of the class is not before the Court on Plaintiff's discovery motion. As Plaintiffs note, "whether both business accounts and consumer accounts are proper for class treatment in this case should be decided at the class certification stage, not on a discovery motion." ECF No. 130, PageID.4289 (citing *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 947 (E.D. Mich. 2022)).

Plaintiffs' objections are **OVERRULED**.

## III.   Conclusion

Plaintiffs' Motion for Ratification is **DENIED**, and their Objections are **OVERRULED**.

**SO ORDERED.**

Dated:  December 13, 2023                          /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge


CERTIFICATE OF SERVICE

26

Copies of this Order were served upon attorneys of record on
December 13, 2023, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Deputy Clerk